UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFF MULLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 4:20-cv-0862-CDP |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| CITY OF ST. LOUIS, etc., et al., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT CITY

Defendant City of St. Louis has moved the Court to dismiss plaintiff's amended complaint [ECF 23] herein for lack of equitable jurisdiction and failure to state a claim upon which relief can be granted for equitable and declaratory relief, pursuant to F.R.Civ.P. 12(b)(1) & (6). Defendant further moves to dismiss all claims for damages against the City.

Plaintiff's amended complaint is as prolix as the original complaint but remains sparse in its pleading of material facts plausibly showing a right to relief. As best defendant City[1] can discern, the gist of plaintiff's claims is that he wished to preach the Christian gospel to the attendees at a "Pride Fest" event taking place in the City of St. Louis. ECF 23, ¶32-33. The "Pride Fest" had a permit as a festival to occupy a street or other public space. That permit was issued by the City pursuant to a generally applicable ordinance that on its face has nothing to do with the purpose of a festival or the beliefs of permittees or attendees. *Id.,* ¶36. Plaintiff alleges

---

[1] The amended complaint seeks damages from the individual defendants in their personal capacities but also apparently asserts claims against them "acting as" police officers. ECF 23, ¶1. To the extent the individuals are sued in their official capacities, the plaintiff's claims are really claims against the City only. E.g., *Stockley v. Joyce*, 963 F.3d 809 (8th Cir. 2020); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998); *Thompson v. Murray*, 2014 U.S. Dist. LEXIS 188431 (E.D. Ark. 2014), appeal dismissed, 800 F.3d 979 (8th Cir. 2015).

that the permit was "non-exclusive," ECF 23, ¶54, but he also alleges that the City's permit ordinance effectively converts a public forum (i.e., a street) into a private forum, temporarily. ECF 23, ¶¶129-30, 146, *passim*. Conclusions aside, he alleges that when he entered a "gated area" of the festival to preach, defendant police officers ordered him to leave, because the "Pride Fest" permittees did not want to allow him to preach within the festival's permitted area. *Id.*, ¶¶58-62, 70ff., 82. Although plaintiff alleges that defendant Lt. Benoist was a City policymaker for purposes of interpreting and applying the City's permit ordinance, there is nothing in the amended complaint to show that, as a matter of state law, police lieutenants have such authority, nor is there any allegation showing that the text of any City ordinance mandates exclusion of particular persons from festivals. *Id.*, ¶¶36-42. Rather, a fair reading of the complaint is that plaintiff was excluded at the direction of the festival permittee, who objected to his preaching. *Id., ¶*82.

Although plaintiff asserts generally that he wishes to continue preaching in the City in the future, he does not allege that festival permittees in the City of St. Louis have ever before excluded him from a festival, nor does he allege that permittees in the future will inevitably exclude him from their festivals. ECF 23, ¶¶32-33. Similarly, the complaint does not allege that City police officers always and everywhere exclude persons like him from festivals pursuant to any ordinance or custom of the City. Finally, plaintiff does not allege that "Pride Fest" will occur in the future under similar circumstances. On the contrary, the amended complaint implies that any future "Pride Fest" will be subject to the permitting requirement and it is entirely speculative that any permit will be sought or obtained by "Pride Fest" in the future.

Plaintiff alleges multiple "causes of action" that claim that the City' permit ordinances and their enforcement have abridged and will abridge his constitutional rights to freedom of

speech and the free exercise of religion. It would appear that the crux of his claim is that the City's permit ordinance, by converting public spaces to private spaces temporarily, for the benefit of the permittees, infringes plaintiff's constitutional rights. He also appears to contend that the permit ordinance is overbroad and invests the permitting authority with "unbridled discretion," apparently to grant permits. ECF 23, ¶131. However, plaintiff does not allege that he has ever applied for and been denied a permit on account of his religious believes.

      1.      **Plaintiff lacks standing to seek declaratory and injunctive relief.**

It is elementary that, to invoke the equitable jurisdiction of a federal court, the plaintiff must plead sufficient facts to show: (1) an "injury in fact" -- a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation -- a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability -- a likelihood that the requested relief will redress the alleged injury. "This triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102 (1998). In cases involving claims for equitable relief, the standing inquiry "shades into" the inquiry as to whether a plaintiff has shown the basic requirements for equitable relief. *O'Shea v. Littleton,* 414 U.S. 488, 501-03 (1974).

In this case, plaintiff's pleading, viewed through the plausibility lens mandated by *Ashcroft v. Iqbal,* 562 U.S. 552 (2009), wholly fails to show the essentials of standing. Here, plaintiff alleges that he was excluded from the "gated area" of "Pride Fest," a permitted festival being conducted by non-governmental third parties. He does not allege that "Pride Fest" will necessarily be permitted to conduct a festival in the future, nor does he allege that, if it does, he

will be excluded from the festival area if he chooses to preach.  More importantly, he does not (and cannot) allege that he will always be threatened with arrest by City police officers if he attends a future festival event and preaches there.

Plaintiff's claim for injunctive relief therefore fails, because he has not and cannot allege facts showing a realistic threat of future irreparable harm, resulting from the City's granting of festival permits to private parties for the temporary use of streets or other public spaces.  See *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).  Indeed, plaintiff's claim, if cognizable, would call into question a long line of Supreme Court precedent forbidding government to deny permits for the use of public streets unless the denial is premised on objective standards reasonably related to the public health, safety and welfare.  E.g., *Hague v. CIO,* 307 U.S. 496 (1939).  In this case, the ordinance attacked by plaintiff has nothing to do with plaintiff.   The ordinance merely authorizes anyone to obtain a festival permit to use public streets or other public property on a temporary basis for the permittee's presumably lawful purposes.  The ordinance does not attempt to restrict the right of the permittee to exclude persons from the festival for any reason.  Indeed, if the City attempted to impose content-based restrictions on the permittee, the City would be violating the Constitution indeed.  E.g., *Kunz v. New York,* 340 U.S. 290 (1951).

Plaintiff's claim for declaratory relief fares no better.  His claim for declaratory relief goes hand in glove with his claim for injunctive relief.  He seeks a declaration that the City's enforcement, interpretation, and application of Section 3.45 of the City's Code of Ordinances against him violated his constitutional rights under the First and Fourteenth Amendments, necessarily implying that future enforcement would likewise deprive him of constitutional rights. However, plaintiff must have standing to seek declaratory as well as injunctive relief.  See, e.g., *United States v. Richardson,* 418 U.S. 166 (1974).  Here, too, plaintiff fails to show any concrete

injury fairly traceable to the City's permitting ordinance. The ordinance authorizes temporary use of public space, but nothing else. Nothing in the amended complaint plausibly shows that the City has enforced or will enforce the ordinance itself in an unconstitutional manner.

Moreover, the declaratory relief sought by plaintiff, insofar as it relates to his arrest, is more properly the subject of his action for damages, as the facts alleged by plaintiff must be proved to a jury to warrant a damage award, even if nominal. Cf. *Beacon Theatres v. Westover,* 359 U.S. 500 (1959).

Given that the Missouri Constitution contains similar standing requirements to Article III of the U.S. Constitution, e.g., *Kelly v. Hanson,* 959 S.W.2d 107 (Mo.banc 1997), it follows that plaintiff also lacks standing to seek injunctive and declaratory relief under state law.

**2.      Plaintiff's amended complaint wholly fails to state facts plausibly showing that any ordinance or custom of the City caused any deprivation of plaintiff's constitutional rights.**

Assuming that plaintiff has surmounted the standing issue, it is apparent from the face of the amended complaint that no claim for equitable relief is stated.

First, defendants can find no authority for the proposition that a state or local government cannot grant the privilege of exclusive use of a public space to a private actor, as long as the grant is not made under an unconstitutional standard, e.g., discrimination on the basis of race, religion, or viewpoint. In the case at bar, there is nothing on the face of the City's permitting ordinance, nor alleged in the amended complaint, that plausibly shows that the City's grant of a permit to "Pride Fest" was intended to or did discriminate against plaintiff in any way. Nor are there any facts pleaded that show that the permittee was acting as a proxy for the City in conducting its festival, or that the City was actively involved in the objectives or conduct of the

permittee.  Cf. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163 (1972)(racial discrimination by private holder of liquor license not state action).   Thus, plaintiff shows no basis for the declaratory or equitable relief he seeks against the City.

Second, it is well established that organizers or managers of a private event, even one that is subject to government permitting, are entitled to exclude persons from their event on the basis of their own First Amendment rights.  See *Hurley v. Irish-American Gay, Lesbian & Bisexual Group,* 515 U.S. 557 (1995).  The City's permit ordinance cannot, as a matter of law, compel permittees to admit persons to their events against their wishes; and, of course, it does not attempt to do anything of the sort.  The City's enforcement of "Pride Fest's" exclusion of plaintiff is, therefore, not a constitutional violation, but is virtually compelled by the Constitution.

Finally, the amended complaint wholly fails to state a cognizable claim for equitable relief under Missouri's Religious Freedom Restoration Act, Mo.Rev.Stat. §1.302.  To violate this statute, the City's ordinance would have to restrict plaintiff's exercise of his religion.  On its face, it does no such thing.  The ordinance authorizes the grant of permits to use public spaces for certain purposes, period.  It has nothing to say about religion.  It no more restricts plaintiff's free exercise of religion (or any other constitutional right) than do the trespassing laws, which would preclude plaintiff from setting up his amplifier or otherwise proselytizing without permission on private property, not because he is exercising his religion, but because he is invading private rights.. Cf. *Doe v. Parson,* 567 S.W.3d 625 (Mo.banc 2019).

**3.     The amended complaint fails to state a claim for damages against the City.**

In addition to equitable and declaratory relief, plaintiff seeks an award of nominal or compensatory damages against the City.  The amended complaint fails to plausibly plead a claim for damages against the City.

Plaintiff's amended complaint recognizes that a municipality cannot be liable under 42 U.S.C. §1983 on the basis of *respondeat superior*. The amended complaint also recognizes that, on its face, there is nothing unconstitutional about the City's permitting ordinance. So plaintiff attempts to set up defendant Lt. Benoist as having "supervisory decision-making authority" in interpreting and applying the City's ordinance "on the scene." ECF 23, ¶¶60-61. In so alleging, plaintiff appears to be asserting that the City is liable for Lt. Benoist's conduct because he had policymaking authority for the City and exercised it to deprive plaintiff of constitutional rights. This is ridiculous. The status of a government officer as a policymaker is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112 (1988). As a matter of law, a police lieutenant is not a City policymaker. Plaintiff can point to no statute, charter provision or ordinance that invests a police lieutenant with the authority to make final decisions on behalf of the City. The most any police officer can do is make an arrest and present a complaint to the City's prosecutor (i.e., the City Counselor, St. Louis Charter, art. X).

Plaintiff's amended complaint also invokes theories of enforcement of the City's "customs and practices" and, evidently, failure to train officers in First Amendment principles, as causing plaintiff's constitutional deprivation. ECF ¶¶2, 3, 113, 118. However, plaintiff wholly fails to allege any pattern of unconstitutional conduct of City officers in regard to street festival permits that was known to City policymakers and that caused any constitutional deprivation in the past. As noted above, there is nothing in constitutional law that requires the City to prevent private event permittees from excluding persons from a permitted event. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group,* 515 U.S. 557 (1995). Further, there is nothing in the complaint that shows that persons similarly situated to plaintiff had ever before been excluded from a permitted event by City law enforcement officers, or that any prior exclusions were brought to the attention

of City policymakers. Plaintiff's amended complaint wholly fails the "rigorous" standard of pleading required to impose municipal liability on the basis of "custom" or failure to train. See *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997); *City of Canton v. Harris,* 489 U.S. 378 (1989); *Szabla v. City of Brooklyn,* 486 F.3d 385 (8th Cir. 2007)(*en banc*).

Finally, the City notes that the defendant officers are entitled to qualified immunity, as is argued in their motion to dismiss. Without a constitutional violation by the individual officers, there is no basis for claiming a constitutional violation by the City. *Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017).

## Conclusion

Plaintiff's amended complaint should be dismissed as to defendant City.

MICHAEL A. GARVIN, CITY COUNSELOR

/s/Robert H. Dierker 23671(MO)
Deputy City Counselor
dierkerr@stlouis-mo.gov
Amy Raimondo 71291(MO)
Assistant City Counselor
314 City Hall
1200 Market St.
St. Louis, MO 63103
314-622-3361
314-622-4596 (FAX)
Attorneys for Defendant City