UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFF MULLEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:20 CV 862 CDP |
| CITY OF ST. LOUIS, MISSOURI, et al. | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Jeff Mullen is a Christian who "share[s] his religious, political, and social speech with people" in public places around the City of St. Louis. Amended Complaint, ECF 23 at ¶ 24. Mullen alleges that police officers told him to leave the vicinity of the 2019 Pride Festival in St. Louis at the request of a Festival organizer. He contends that the St. Louis City Code of Ordinances and related municipal policies regulating the issuance of special events permits, as interpreted and enforced by the City, unlawfully infringe on his constitutional rights and grant City officials unbridled discretion to restrict protected speech. He brings this action against the City of St. Louis, Missouri, three individually-named St. Louis Metropolitan Police Department officers (defendants Benoist, Brown, and Kim), and five other unnamed police officers seeking declaratory relief, injunctive relief,

and damages under 42 U.S.C. § 1983 and state law.  The defendants have moved to dismiss the Amended Complaint.

For the following reasons, I will dismiss the Amended Complaint.

## Background

The following facts are drawn from Mullen's Amended Complaint.  ECF 23.  Mullen alleges that he has a "religious mandate" to spread the Christian gospel in public spaces within the City of St. Louis.  Mullen shares his message in various ways, including carrying signs, distributing literature, and engaging in discussions with members of the public.

On June 19, 2019, Mullen sought to preach to attendees at the St. Louis Pride Festival.  Mullen alleges that the Festival was held in a gated area of the City, but that attendance was free and open to the public.  Mullen entered the gated area and began to preach with an amplifier.  Sometime thereafter, he was approached by a Festival organizer who was accompanied by defendants Lt. Benoist, Lt. Brown, and Officer Kim.[1]  Officer Kim allegedly told Mullen: "You gotta go, they want you out of here."  Mullen offered to turn down his amplifier, but the Festival representative stated that he needed to leave the gated area of the

---

[1] Mullen alleges that Lt. Benoist was the supervisory officer and that he had "supervisory decision-making authority on the scene for the City for interpreting and enforcing the Code and Policies."  ECF 23 at ¶¶ 58-61.

Festival entirely.  When Mullen objected, Lt. Benoist stated that the Festival representative had a permit, and that Mullen would "probably [get] a summons of some sort" if he did not leave.  Mullen was then escorted out of the gated area, prevented from reentering by a different unnamed officer stationed at the entrance of the Festival, and then informed by that officer that if he wanted to preach with his amplifier, he would need to go across the street from the entrance to the Festival or he may be subject to arrest.

Mullen alleges that the Festival was issued a permit for the area under the authority of Section 3.45 of the St. Louis City Code of Ordinances,[2] which governs

---

[2] The Code requires that "an application for a special event permit other than a parade shall be filed with the Special Events Office not less than sixty calendar days before the first proposed day of the special event" and provides in relevant part as follows:

> "Special event" means an organized event which is open to the public, requires a permit or other approval from more than one City department or agency other than the Special Events Office, and takes place on public right of way/property, including but not limited to parades, certain charitable runs or walks, street fairs, and festivals. Special event does not include (i) picnics, barbecues, sports activities or private events at park facilities, under permits from the Department of Parks, Recreation and Forestry, or (ii) events of any kind in Forest Park, or (iii) block observances of National Night Out.
>
> "Special event zone" means the entire area in which a special event occurs and includes the production zone, all vending locations connected with the event, temporary signage, and the area expected to be occupied by persons attending the event.
>
> "Festival" means an organized social, cultural, religious, artistic, athletic or like event taking place on one or more days which involves use of public right of way/property and which is not a parade.
>
> "Public right-of-way/property" means any property that is owned or controlled by the City, including but not limited to streets, sidewalks, parks, plazas, malls, and public buildings.

3

the City's Special Events rules and regulations, and a municipal policy[3] requiring a street permit for events held on streets or sidewalks.  ECF 12 at ¶¶ 35-43.  Mullen summarizes his claims as "challenging the use of a permit, authorized by and issued under the Code and Policies, to exclude protected speech from a traditional public forum."  ECF 32 at pg. 12.  Mullen additionally asserts that the City Code and Policies are unconstitutional as applied because they attempt to convert a traditional public forum into a nonpublic forum, limit his freedom of speech and religion by forcing him out of a traditional public forum, and grant public officials the unbridled discretion to enforce speech regulations without any rational, substantial, or compelling government interest.

Mullen brings his Amended Complaint in eight counts: Mullen alleges that the City's interpretation and enforcement of the Code and Policies, by and through the defendant Officers, violates his First Amendment right to freedom of speech in Counts I and V, and his First Amendment right to free exercise of religion in

---

ECF 23 at ¶¶ 35-40.

[3] The Code vests the Special Events Office with authority to promulgate regulations to facilitate the regulation of special events and those regulations must be approved by the City Counselor's office and the Director of Public Safety.  ECF 23 at ¶ 41.  The Policies require a street permit "for any event that requires use of any part of a street or sidewalk.  This includes the closing of an entire street or just designating curb lanes for special parking/no parking."  ECF 23 at ¶ 45.

4

Counts II and VI.[4]  Counts III and VII allege due process violations under the Fifth and the Fourteenth Amendment for the same conduct.  These claims are all brought under 42 U.S.C. § 1983.  Counts IV and VIII allege that the City's enforcement of the Code and Policy violates Missouri's Religious Freedom Restoration Act.

## Discussion

A. § 1983 Claims Against the Defendant Officers

I will first turn to Mullen's § 1983 claims against the defendant officers.  His brief clarifies that he "sues the officers only in their individual capacities" and "seeks only injunctive and declaratory relief against the officers."  ECF 33 at 2-3.  However, state officers may only be sued in their individual capacites for money damages under § 1983.  *See Chambers v. Cruz,* 2020 WL 3971606, at *5 (D. Neb. July 14, 2020); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala. 2013); *Brown v. Montoya,* 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo,* 502 U.S. 21, 30 (1991)); *Greenawalt v. Indiana Dep't of Corrections,* 397 F.3d 587, 589 (7th Cir. 2005) (noting that § 1983 does not permit injunctive relief against state officials sued in their individual capacity).  As plaintiff is not seeking money

---

[4] Counts V - VIII repeat Counts I - IV verbatim but challenge the Policies instead of the Code.

5

damages from the defendant officers and is suing them only in their individual capacities, his § 1983 claims against defendants Benoist, Brown, and Kim are dismissed for failure to state a claim. I will also dismiss the claims against the Doe defendant police officers (Does 1-5) for the same reason.

B. § 1983 Claims Against the City

As for the federal claims against the City, Mullen admits that he "is not challenging the Code on its face, but as applied." ECF 32 at 3. The same is true of his claims regarding the City's Policies.[5] Mullen seeks declaratory and injunctive relief against the City as well as damages under 42 U.S.C. § 1983. In each of his federal claims, Mullen asks the Court to issue a preliminary[6] and permanent injunction restraining and enjoining defendants from enforcing the Code and Policies "in the manner defendants enforced it against Plaintiff on June 29, 2019."

---

[5] Mullen does not make the same explicit admission with respect to the Policies in his opposition to dismissal because he mistakenly argues that the City moves only to dismiss his claims based on the Code. However, the City's motion to dismiss is directed at all counts of the Amended Complaint, not just those counts challenging the Code. Moreover, Mullen's claims based on the Policies mirror those based on the Code and are "as applied" challenges only. Paragraph 4 of the Amended Complaint avers that "[t]his action challenges the interpretation and enforcement (as applied challenge) of the City's Code and Policies against Plaintiff on June 29, 2019." ECF 23 at ¶ 4.

[6] Although the Amended Complaint requests preliminary injunctive relief, Mullen never filed a motion for preliminary injunction or sought discovery for, or a hearing on, any request for preliminary relief in this case. Even if Mullen had timely filed such a motion, any preliminary relief requested in this case would likely be foreclosed by the Eighth Circuit Court of Appeals' decision in *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150 (8th Cir. 2021).

ECF 23 at 35, 37, 40, 41.  He also seeks a declaration "to determine Plaintiff's and Defendant's rights and duties regarding enforcement" ECF 23 at 36, 37, 40, 41, of the Code and Policies, as well as a declaration that defendant's enforcement of the City's Codes and Policies against him on June 29, 2019 violated his constitutional rights to freedom of speech, free exercise of religion, and due process, ECF 23 at 36, 37, 41, 42.

The City moves to dismiss the § 1983 claims against it for failure to state any claims for municipal liability.  Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," with each allegation being "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  Under Rule 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion a complaint "must include enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A legally sufficient complaint will allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation, providing more than just labels and conclusions. *Twombly*, 550 U.S. at 555.  Plausibility is not equivalent to probability, but it is something "more than a sheer

7

possibility that a defendant has acted unlawfully." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [their claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

In reviewing the Amended Complaint, the Court must accept all of Mullen's factual allegations as true and draw all inferences in his favor. But the Court is not required to accept the legal conclusions he draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC,* 696 F.3d 766, 768-69 (8th Cir. 2012). Additionally, the Court "is not required to divine [plaintiff's] intent and create claims that are not clearly raised, . . . and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (cleaned up). To survive dismissal, Mullen's allegations must be based on factual information that makes the inference of culpability plausible. *See Iqbal*, 556 U.S. at 682.

Municipal liability under § 1983 cannot be based on *respondeat superior*, but instead must arise from "action pursuant to official municipal policy of some nature." *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 691 (1978). To prevail on any of his § 1983 claims against the City, Mullen must show that the

8

constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016).

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation." *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700).

The City may also be held liable if the "failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (quoting *Andrews v. Fowler*,

9

98 F.3d 1069, 1078 (8th Cir. 1996)). In such a case, the plaintiff must show that the City was "deliberately indifferent to or tacitly authorized the offending acts," which requires evidence that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.* (quoting *Fowler*, 98 F.3d at 1078). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quotation omitted).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, Mullen has not alleged any plausible facts demonstrating that police officers Benoist, Brown, and/or Kim were "responsible for establishing final government policy respecting such activity," a prerequisite to municipal liability under § 1983. *Pembaur,* 475 U.S. at 483 (1986). Nor has he alleged any plausible "facts showing that policymaking officials had notice of or authorized [Benoist, Brown and/or Kim's] conduct" which could give rise to municipal liability. *See*

10

*Miller v. City of St. Paul,* 823 F.3d 503, 507 (8th Cir. 2016) (quoting *Kelly v. City of Omaha, Neb.,* 813 F.3d 1070, 1076 (8th Cir. 2016)).

Although Mullen argues that the defendant police officers "acted pursuant to [the City's] customs and practices, not just the Code and Policies," the Court concludes that Mullen's barebones allegations that "the City's customs, policies, practices, and actions" violated his constitutional rights are wholly insufficient to state a claim against the City that his constitutional rights were violated pursuant to a City custom.  Here, Mullen has not alleged any facts from which a reasonable inference could be drawn that the City had a widespread custom of escorting individuals who are exercising first amendment rights out of permitted events if requested by the permittee, which allegedly resulted here in the infringement of Mullen's constitutional rights.  As stated above, Mullen does not challenge the Code and Policies on their face, only how they were applied to him at the 2019 Pride Festival.  But he makes no allegations of the existence of "a continuing, widespread, persistent pattern of unconstitutional misconduct" by the City's employees which was the moving force behind the alleged deprivation of his constitutional rights as he must to state a claim for municipal liability.  *See Miller*, 823 F.3d at 506 (quoting *Zanders v. Swanson,* 573 F.3d 591, 594 (8th Cir. 2009)); *Kelly*, 813 F.3d at 1076.

Mullen attempts to hold the City liable by alleging that the City was the employer of the police officers and then alleging that "defendants" violated his constitutional rights. But the City's liability under § 1983 cannot be based on *respondeat superior*, and the City cannot be held liable simply because it employs tortfeasors. *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). Mullen cannot bootstrap a claim against the City by alleging that Benoist was a "supervisor" with "decision-making authority" because there are still no facts suggesting that any custom of the City was the moving force behind the alleged constitutional violation. Here, the only facts alleged by Mullen relate to alleged constitutional violations by individual police officers on a single occasion (the 2019 Pride Festival). Mullen's conclusory allegation that these police officers acted consistently with City custom must be based on factual information that makes the inference of culpability plausible. *See Iqbal*, 556 U.S. at 682. Here, Mullen has failed to meet that standard and adequately allege that the defendant officers acted pursuant to any City custom so as to state a claim of municipal liability against the City.

Similarly, the Amended Complaint fails to state a claim for municipal liability against the City for failure to train or supervise as it is devoid of any plausible allegations that the City "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation."

*Tlamka*, 244 F.3d at 635 ((quoting *Fowler*, 98 F.3d at 1078).  Moreover, Mullen makes no plausible factual allegations of a "pattern of similar constitutional violations" sufficient to hold the City liable.  *See Lincoln Cty.*, 874 F.3d at 585.  Again, Mullen's allegation that Benoist was a supervisor is insufficient to establish a failure to train or supervise claim against the City.[7]  Mullen's federal claims against the City are dismissed for failure to state a claim.

This Court has federal question jurisdiction over Mullen's claims, and there is no other basis for the Court's exercise of jurisdiction on the face of Mullen's Amended Complaint.  As I have now dismissed the federal claims against all defendants, I decline to exercise supplemental jurisdiction over Mullen's state claims brought under Missouri's Religious Freedom Restoration Act and will dismiss them without prejudice.  *See Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998).

Accordingly,

**IT IS HEREBY ORDERED** that the motions to dismiss filed by defendants Benoist, Brown, and Kim [28] and the City of St. Louis [26] are granted as follows: plaintiff's federal claims against all defendants, including those

---

[7] Although this allegation might be relevant if Mullen had brought a claim for damages against Benoist in his individual capacity for his failure to supervise or train subordinate police officers, he has chosen not to bring such a claim.

claims asserted against Doe defendants 1-5, are dismissed for failure to state a claim, and plaintiff's state law claims are dismissed without prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                                   */s/ Catherine D. Perry*
                                                   CATHERINE D. PERRY
                                                   UNITED STATES DISTRICT JUDGE

Dated this 10th day of December, 2021.